Appeal from the final decree entered in this cause November 27th, 1934, having been taken, this opinion is now prepared.
The attorney-general of this state brought this bill against a number of defendants, including the appellant U.S. Mines of Colorado, Incorporated, a corporation of the State of Colorado, Asa M. Smith Company, and Otto Beselack, vice-president and general manager of the defendant U.S. Mines of Colorado, Incorporated, pursuant to the provisions of the New Jersey Securities act, chapter 79 of the laws of 1927, the amendments thereof and supplements thereto.
Upon the filing of the bill of complaint an order to show cause was made directing the defendants to appear on the 30th day of October, 1934. On the return day, a decree was advised and receiver appointed for all the defendants with the exception of the defendant-appellant, as to which defendant the cause was continued until the 27th day of November, 1934, on which day after considering the proofs before the court and the arguments of counsel the final decree appealed from was entered adjudging the defendant-appellant guilty of violating the statute and enjoining appellant from the "issuance, sale, offer for sale, purchase, offer to purchase, promotion, negotiation, advertisement and/or distribution, within and/or from this state, of any securities whatsoever."
The bill of complaint was supported by the affidavits of eleven persons, in addition to the affidavit of the assistant attorney-general in charge of the division of securities who investigated the matter. *Page 140 
It was charged in paragraphs 8 and 9 of the bill of complaint that the appellant entered into an agreement with the other defendants named therein as part of a scheme, and in violation of the New Jersey Securities act, to defraud the public. According to the agreement, Asa M. Smith Company, with the aid and assistance of appellant, was to dispose of shares of the capital stock of the U.S. Mines of Colorado, Incorporated. The means and method used, the proofs show, were in violation of section 2, subdivisions a, b, c, d and e of the Securities act, and was just another stock selling scheme, the sole income of U.S. Mines being derived from profit on sales of their stock.
The defendant on May 29th, 1933, entered into an agreement with Manning Company, New York (later assigned to Asa M. Smith 
Company), for the sale of two hundred and fifty thousand shares of its stock at a price of seventy-five cents per share net to the defendant, and later on May 25th, 1934, entered into another agreement with Asa M. Smith Company, the terms of which are set forth in the bill of complaint and not denied. The average cost of purchase of U.S. Mines of Colorado, Incorporated, stock was sixty-two cents per share. The average sales price was $1.10 per share.
On the hearing, the defendant presented one affidavit, that of Otto Beselack, vice-president and general manager, in which he admits that the defendant had no income except from sale of its capital stock, a fact withheld from the public.
The material for the prospectus issued by Asa M. Smith 
Company was furnished by appellant. Among other matter set forth in the prospectus sent out to the public appeared the following: "U.S. Mines of Colorado, Inc., is a consolidation of a number of proven properties, many of which have a handsome record of production and profit." That statement was admittedly untrue. Beselack in an attempt to explain the statement says: "Naturally, however, these properties could not bring in any income until sufficient cash capital was provided to take care of carrying charges and to work the properties. It was the object of the arrangements *Page 141 
with Asa M. Smith Company to obtain from them funds for these purposes. Since the beginning of September, 1934, the corporation has employed an average of about twenty men in getting the properties ready for active production with most gratifying results." (Italics mine.)
In the promotion of the stock selling scheme it was represented that the stock of the defendant would within a short time after the purchase by the prospective buyer be listed on the New York Curb Exchange and the New York Mining Exchange and would sell at more than $2.50 a share; that a syndicate of bankers had deposited $500,000 in a special account in the Federal Reserve Bank of New York for the purchase of two hundred thousand shares of the capital stock of the defendant-appellant as soon as it was listed on the New York Mining Exchange, and that all of the defendants in the complaint mentioned had themselves invested their personal assets in the stock of the company, none of which was true.
Officers and directors of appellant shortly after its organization were given shares of stock for which none paid any cash consideration. Otto Beselack, the vice-president and manager, received in excess of fifty-three thousand six hundred shares of stock. As to this Beselack says: "While it is true that shares were transferred to officers and directors without cash being paid for them, nothing adverse to the officers and directors can be implied from this fact, for the reason that these transfers were made for fair valuable considerations." After the organization of the company he says that one Seipp and he transferred to U.S. Mines for $650,000 (par value) of stock certain mining properties which they held as trustees for eight persons "with full power to dispose thereof on any terms satisfactory to them and immediately turned back into the treasury $330,000 (par value) of the capital stock transferred to them, retaining only $320,000 par value of said stock. The value of the property transferred by the trustees to the corporation was fixed arbitrarily at the figure stated. This is expressly permitted by the statutes of the State of Colorado in view of theimpossibility *Page 142 
of proving the actual value of mining properties until they have been fully explored. The board of directors, however, honestly believed, and believe now, that the properties in question will justify the valuation placed by them on these properties." (Italics mine). Disclosure of this transaction was suppressed and concealed from the public, as was also the fact that for every share of stock taken down by Asa M. Smith 
Company under its agreement for the promotion, negotiation and sale, it received by way of donation one share of stock from Beselack, its vice-president and general manager.
 Injunction granted and receiver appointed. *Page 143